UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STUART ALLEN ROWLEY,

                Plaintiff,         Civil Action No. 15-11988
                                         Honorable Avern Cohn
                                         Magistrate Judge David R. Grand

v.

COMMISSIONER OF
SOCIAL SECURITY,

                Defendant.
_____/

**REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [9, 13]**

       Plaintiff Stuart Allen Rowley ("Rowley") brings this action pursuant to 42 U.S.C. §405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying his application for Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions [9, 13], which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B).

**I.    RECOMMENDATION**

       For the reasons set forth below, the Court finds that the Administrative Law Judge's ("ALJ") conclusion that Rowley is not disabled under the Act is not supported by substantial evidence. Accordingly, the Court recommends that the Commissioner's Motion for Summary Judgment [13] be DENIED, Rowley's Motion for Summary Judgment [9] be GRANTED IN PART to the extent it seeks remand and DENIED IN PART to the extent it seeks an award of benefits, and that, pursuant to sentence four of 42 U.S.C. §405(g), this case be REMANDED to the ALJ for further proceedings consistent with this Report and Recommendation.

## II. REPORT

### A. Procedural History

On June 22, 2012, Rowley filed an application for SSI, alleging a disability onset date of October 1, 1990.[1] (Tr. 187-95). This application was denied initially on September 5, 2012. (Tr. 102-10). Rowley filed a timely request for an administrative hearing, which was held on December 4, 2013, before ALJ JoErin O'Leary. (Tr. 43-68). Rowley, who was represented by attorney Emily Walker, testified at the hearing, as did vocational expert James Lozer. (*Id.*). On February 20, 2014, the ALJ issued a written decision finding that Rowley is not disabled under the Act. (Tr. 28-37). On April 16, 2015, the Appeals Council denied review. (Tr. 1-6). Rowley timely filed for judicial review of the final decision on June 2, 2015. (Doc. #1).

### B. Framework for Disability Determinations

Under the Act, SSI is available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" as the:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §1382c(a)(3)(A). The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

---

[1] At the administrative hearing, Rowley amended his alleged onset date to the application date (i.e., June 22, 2012). (Tr. 46).

2

> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. §404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps …. If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

**C.     Background**

  *1.     Rowley's Reports and Testimony*

At the time of the administrative hearing, Rowley was 50 years old, and at 5'6" tall, weighed 123 pounds. (Tr. 48, 62). He lives with his parents, although he stays with a friend "for a couple days here and there." (Tr. 49-50). He completed tenth grade, taking special education classes, but had no further education. (Tr. 48, 207). He can read "a little bit," but "can't write very good at all." (Tr. 48). Rowley has very little past work experience, having worked for only about three weeks in the past fifteen years, stuffing newspapers with fliers. (Tr. 49). He lost that job because he isolated himself in his bedroom, therefore missing too much work. (Tr. 49, 207).

Rowley alleges disability as a result of several mental impairments,[2] including social

---

[2] Although Rowley also suffers from physical impairments, the Court will not discuss these in detail, as Rowley "does not dispute the physical limitations found by the ALJ." (Doc. #10 at 3).

3

anxiety, panic disorder, social phobia, depression, anxiety, and post-traumatic stress disorder. (Tr. 50, 206). He feels sad and worthless, thinks about suicide "all the time," and has no energy. (Tr. 52). He receives mental health treatment at Community Mental Health, where he sees a psychiatrist and a case manager, and at the time of the hearing, he was taking five different psychiatric medications. (Tr. 50-51). Rowley also testified that, although his case manager has recommended seeing a peer support specialist, he is "[s]cared to" because he "don't know what to say to him." (Tr. 57).

Even though he lives with his parents, Rowley does not spend time with them; instead, he spends most of his days alone in his bedroom, watching television. (Tr. 53-54, 227). His parents prepare dinner for him, but he eats alone in his bedroom, because he does not like "eating in front of people." (Tr. 56). Rowley testified that he is able to drive, but he drives only to the grocery store and to doctors' appointments. (Tr. 63, 228). He is so afraid to leave the house that, when he even thinks about it, his body shakes, his heart races, and he has difficulty breathing. (Tr. 53). His self-care is "poor"; he takes a shower only once or twice a week because he "just don't feel like doing it." (Tr. 57). He has difficulty concentrating and with his memory (for example, he sometimes has difficulty remembering to take his medications). (Tr. 54-55). He also has trouble sleeping at night because his thoughts are racing and he "worr[ies] about everything"; as a result, he ends up taking naps during the day. (Tr. 55-56, 225).[3]

---

[3] Rowley's case manager, who completed his disability report for him, describes him as follows:

> [Stuart] does not give very much info and lacks eye contact. He suffers most days from fear of being hurt and phobia of people in general. He has isolated himself to his room and has very little contact with anyone. He has a high level of anxiety each day and can become irritated [sic]. Stuart is a loner and isolates himself due to fear and trama [sic] that has occurred in his life. Stuart has a hard time sleeping at night and is restless[;] his thoughts are preoccupied by his fears. (Tr. 212).

4

*2. Medical Evidence*

The Court has thoroughly reviewed Rowley's medical record. In lieu of summarizing his medical history here, the Court will make references and provide citations to the record as necessary in its discussion of the parties' arguments.

*3. Vocational Expert's Testimony*

James Lozer testified as an independent vocational expert ("VE") at the administrative hearing. (Tr. 65-67). The ALJ asked the VE to imagine a claimant of Rowley's age, education, and work experience who can perform light work, with the following additional limitations: must avoid concentrated exposure to dust, odors, fumes, and pulmonary irritants; limited to simple, routine, and repetitive tasks, but not at a production pace rate; limited to simple work-related decisions; and no work with the general public. (Tr. 65-66). The VE testified that the hypothetical individual would be capable of working in the light, unskilled job of custodian (13,000 jobs in the state of Michigan). (Tr. 66).

**D. The ALJ's Findings**

Following the five-step sequential analysis, the ALJ found that Rowley is not disabled under the Act. At Step One, the ALJ found that Rowley has not engaged in substantial gainful activity since June 22, 2012 (the application date). (Tr. 30). At Step Two, the ALJ found that Rowley has the severe impairments of multiple arthralgias, chronic obstructive pulmonary disease, hypertension, anxiety, major depressive disorder, panic disorder with agoraphobia, social phobia, generalized anxiety disorder, post-traumatic stress disorder, and alcohol abuse. (*Id.*). At Step Three, the ALJ found that Rowley's impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment. (Tr. 30-32).

The ALJ then assessed Rowley's residual functional capacity ("RFC"), concluding that he is capable of performing light work, with the following additional limitations: must avoid concentrated exposure to dust, odors, fumes, and pulmonary irritants; limited to simple, routine, and repetitive tasks, but not at a production pace rate; limited to simple work-related decisions; and no work with the general public. (Tr. 32-36).

At Step Four, the ALJ determined that Rowley has no past relevant work. (Tr. 36). At Step Five, the ALJ concluded, based in part on the VE's testimony, that he is capable of performing a significant number of jobs that exist in the national economy. (Tr. 36-37). As a result, the ALJ concluded that Rowley is not disabled under the Act. (Tr. 37).

### E.     Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. §405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses.") (internal quotations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). In deciding whether substantial evidence supports the ALJ's

decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) ("if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion'").

**F.  Analysis**

In his motion, Rowley argues that the ALJ erred in giving "little weight" to the opinion of his treating psychiatrist, Suma Cherukuri, D.O.  (Doc. #10 at 14-21).  On October 15, 2013, Dr.

Cherukuri completed a form entitled "Psychiatric/Psychological Impairment Questionnaire," summarizing her findings, after having treated Rowley for more than one year. (Tr. 637-44). Rowley's diagnoses were listed as major depressive disorder, recurrent, moderate; panic disorder with agoraphobia; social phobia; generalized anxiety disorder; and post-traumatic stress disorder. (Tr. 637). His Global Assessment of Functioning ("GAF")[4] score was 40. (*Id.*). When asked about Rowley's prognosis, Dr. Cherukuri stated, "Unable to work; Permanently Disabled." (*Id.*). Clinical findings supporting Rowley's diagnoses included poor memory, sleep disturbance, mood disturbance, substance dependence, recurrent panic attacks, anhedonia or pervasive loss of interests, feelings of guilt/worthlessness, difficulty thinking or concentrating, suicidal ideation or attempts, social withdrawal or isolation, blunt, flat or inappropriate affect, decreased energy, intrusive recollections of a traumatic experience, and generalized persistent anxiety. (Tr. 638). Dr. Cherukuri listed Rowley's primary symptoms as panic attacks, depressed mood, and difficulty sleeping. (Tr. 639).

Dr. Cherukuri then opined that Rowley is markedly limited (defined as effectively precluded) in the ability to understand, remember, and carry out one and two step instructions; understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance and be punctual within customary tolerance; sustain ordinary routine without supervision; work in coordination with or proximity to others without being distracted by them; complete a normal workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately

---

[4] GAF examinations measure psychological, social, and occupational functioning on a continuum of mental-health status from 0 to 100, with lower scores indicating more severe mental limitations. *See White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 276 (6th Cir. 2009).

with the general public; respond appropriately to changes in the work setting; and travel to unfamiliar places or use public transportation. (Tr. 640-42). Dr. Cherukuri further opined that Rowley is moderately limited (defined as significantly limited, but not precluded) in the ability to remember locations and work-like procedures; make simple work-related decisions; ask simple questions or request assistance; accept instructions and respond appropriately to criticism from supervisors; get along with co-workers or peers without distracting them or exhibiting behavioral extremes; maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness; and set realistic goals or make plans independently. (*Id.*).

Dr. Cherukuri also noted that Rowley experiences episodes of deterioration or decompensation in work or work-like settings, evidenced by panic attacks, which cause him to withdraw from situations and/or experience an exacerbation of his symptoms. (Tr. 642). Dr. Cherukuri then opined that Rowley "is severely limited in his ability to function in any work [e]nvironment, even a sheltered workshop," and is incapable of tolerating even "low stress" jobs. (Tr. 642-43). According to Dr. Cherukuri, Rowley's impairments are likely to produce "good days" and "bad days," and he is likely to be absent from work more than three times per month. (Tr. 643-44).

The ALJ considered Dr. Cherukuri's opinion but gave it "little weight." (Tr. 35). She first dismissed the doctor's opinion that Rowley is "permanently disabled," noting that "a finding of 'disabled' is reserved for the Commissioner." (*Id.*). The ALJ then discounted the remainder of Dr. Cherukuri's opinion, stating: "Additionally, it is not consistent with the treatment records, which show moderate limitations. The claimant has also not received group therapy, outpatient hospitalization, or inpatient treatment." (*Id.*). Rowley now argues that the reasons articulated by

9

the ALJ for discounting Dr. Cherukuri's opinion are not supported by substantial evidence. (Doc. #10 at 14-21). The Court agrees.

Courts have recognized that an ALJ "'must' give a treating source opinion controlling weight if the treating source opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and is 'not inconsistent with the other substantial evidence in [the] case record.'" *Blakely*, 581 F.3d at 406 (internal quotations omitted). If the ALJ declines to give a treating physician's opinion controlling weight, she must document how much weight she gives it, considering a number of factors, including the "length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (citing 20 C.F.R. §404.1527(c)(2) (ALJ must "give good reasons" for weight given to treating source opinion)).

In this case, the primary reasons articulated by the ALJ for discounting Dr. Cherukuri's opinion – namely, that it opines on a legal issue reserved to the Commissioner and is "not consistent with the treatment records" – are not supported by substantial evidence. As an initial matter, the Court acknowledges that the Commissioner is correct that "the ultimate issue of whether a claimant is disabled is administrative in nature and is reserved for the Commissioner to determine." (Doc. #13 at 9 (citing 20 C.F.R. §416.927(e)). Thus, the ALJ correctly noted that Dr. Cherukuri's opinion that Rowley is "Unable to work; Permanently Disabled" is not entitled to any special significance. *See Bass*, 499 F.3d at 511. At the same time, however, the fact that Dr. Cherukuri's eight-page opinion reaches this ultimate conclusion does not necessarily mean that the entire opinion should be afforded little or no weight, particularly where, as here, the

opinion details Dr. Cherukuri's insights into the severity of, and limitations posed by, Rowley's impairments.[5] *See Hollis v. Comm'r of Soc. Sec.*, 2015 WL 357133, at *22 (E.D. Mich. Jan. 27, 2015) ("The ALJ might have justifiably disregarded the conclusion that Plaintiff cannot work – which rests with the Commissioner and necessarily entails vocational considerations [the treating physician] was not qualified to make – but the ALJ could not ignore that [the treating physician] intended to diagnose severe limitations flowing from Plaintiff's impairments."). Indeed, Dr. Cherukuri's responses to a detailed questionnaire provide the type of medical opinion as to Rowley's functional limitations that is contemplated by the Regulations, and this opinion is entitled to proper consideration by the ALJ.

Moreover, the other reasons articulated by the ALJ for discounting Dr. Cherukuri's opinion are not supported by substantial evidence. Specifically, the ALJ also rejected Dr. Cherukuri's opinion as inconsistent with certain unspecified and unidentified treatment records, which purportedly "show moderate limitations." (Tr. 35).[6] But, a review of the record does not support this conclusion: Dr. Cherukuri's opinions as to Rowley's mental limitations are consistent with the progress notes and treatment records. For example, when asked to identify clinical findings supporting Rowley's diagnoses, Dr. Cherukuri listed: poor memory, sleep

---

[5] In his decision, the ALJ lists various aspects of Dr. Cherukuri's opinion, including that Rowley "has moderate to marked limitations in understanding and memory, sustain [sic] concentration and persistence, social interactions, and adaptation…[and that he] would miss work more than three times in a month." (Tr. 35) (internal citations omitted). The ALJ did not specifically state any weight he was giving to these particular opinions. Instead, he next wrote, "The doctor opined that [Rowley] is permanently disabled. I give this opinion little weight, as a finding of 'disabled' is reserved for the Commissioner." (*Id.*) (internal citations omitted). While the ALJ's reference to a singular "opinion" is somewhat unclear, it appears he treated *all* of Dr. Cherukuri's opinions as merely concluding that Rowley was "disabled," and therefore entitled to little or no weight. Such treatment mischaracterizes Dr. Cherukuri's opinions and is erroneous.

[6] Again, the ALJ appears to have erroneously treated all of Dr. Cherukuri's opinions as one singular one that Rowley is disabled. (Tr. 35) ("Additionally, *it* is not consistent … ") (emphasis added).

disturbance, mood disturbance, substance dependence, recurrent panic attacks, anhedonia or pervasive loss of interest, feelings of guilt/worthlessness, difficulty thinking or concentrating, suicidal ideation or attempts, social withdrawal or isolation, blunt, flat or inappropriate affect, decreased energy, intrusive recollections of a traumatic experience, and generalized persistent anxiety. (Tr. 638). The mental status examinations in Dr. Cherukuri's treatment notes confirm these findings, documenting evidence of a depressed affect and decreased energy (Tr. 329); a dysphoric mood, constricted affect, paranoia, and a somewhat poor ability to abstractly process information (Tr. 314); somewhat constricted affect and paranoia (Tr. 307); dysphoric mood, constricted affect, and somewhat poor judgment (Tr. 349); tired appearance, depressed mood, and constricted affect (Tr. 559); depressed mood and constricted affect (Tr. 564); and anxious mood and mannerisms, suicidal thoughts, anxious and depressed emotional reactions, inability to perform serial seven calculations, and difficulty with simple multiplication and division (Tr. 294-95). Rowley's GAF score was consistently 40, which is consistent with Dr. Cherukuri's opinion that he suffers from very severe symptoms and is markedly limited in numerous respects.[7] (Tr. 308, 315, 350, 361, 473, 559, 564, 678). Moreover, Dr. Cherukuri was routinely and repeatedly adjusting Rowley's psychiatric medications and doses in an attempt to moderate his ongoing symptoms, further supporting her opinion that his psychiatric symptoms persisted. (Tr. 308 (increasing Celexa and Trazodone and adding Abilify); 350 (transitioning to Cymbalta and Ambien); 361 (increasing Cymbalta, discontinuing Ambien, and starting Restoril); 473 (adding Klonopin); 559 (substituting Viibryd for Cymbalta); 678 (increasing Remeron)). Thus, the ALJ's conclusion that Dr. Cherukuri's opinions are not supported by clinical psychiatric findings

---

[7] A GAF score of 31-40 "indicates some serious impairment in reality testing or communication (*e.g.*, speech is at times illogical, obscure, or irrelevant) or major impairment in several areas such as work or school, family relations, judgment, thinking or mood." *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 276 (6th Cir. 2009).

is not supported by substantial evidence. On remand, the ALJ should evaluate Dr. Cherukuri's opinions in light of the aforementioned treatment records.

The ALJ also discounted Dr. Cherukuri's opinion because Rowley has not received group therapy. (Tr. 35). The Sixth Circuit has recognized, however, that "for a claimant suffering from mental illness, noncompliance with treatment may be a symptom of her condition, rather than evidence that her condition is not disabling." *Polhemus v. Colvin*, 2016 WL 949218, at *4 (E.D. Mich. Mar. 14, 2016) (citing *White*, 572 F.3d at 283). Thus, while Rowley's treating physician and case manager might have believed group therapy would be helpful, the evidence establishes that Rowley declined this type of treatment because "it is really uncomfortable for him to open up." (Tr. 545). Indeed, he testified at the administrative hearing that he is "[s]cared to" see the peer support specialist his case manager recommended. (Tr. 57). Thus, Rowley's symptoms appear to explain his failure to participate in group therapy; indeed, this is entirely consistent with Dr. Cherukuri's opinion that Rowley suffers from panic disorder with agoraphobia and social phobia, both of which greatly interfere with his functioning. The ALJ should have considered and weighed this evidence before relying on Rowley's failure to participate in group therapy to discredit his allegations of disabling symptoms. *See Soc. Sec. Rul. 96-7p*, 1996 WL 374186, at *7 (July 2, 1996) (ALJ must not draw any inferences from a failure to seek or pursue certain treatment "without first considering any explanations that the individual may provide, or other information in the case record, that may explain … failure to seek medical treatment"). Under the circumstances, where the ALJ did not mention (let alone consider) the reasons contained in the record for Rowley's lack of participation in group therapy, the Court finds that her reliance on this fact in discounting the opinion of Rowley's treating

13

physician was error.[8]

For all of these reasons, the ALJ's decision to give Dr. Cherukuri's opinion "little weight" is not supported by substantial evidence, and remand is warranted.[9]

### III. CONCLUSION

For the foregoing reasons, the Court RECOMMENDS that the Commissioner's Motion for Summary Judgment [13] be DENIED, Rowley's Motion for Summary Judgment [9] be GRANTED IN PART, the ALJ's decision be REVERSED, and this case be REMANDED for further proceedings consistent with this Recommendation.

Dated: July 12, 2016                           s/David R. Grand
Ann Arbor, Michigan                            DAVID R. GRAND
                                               United States Magistrate Judge

### NOTICE REGARDING OBJECTIONS

---

[8] Rowley also argues that the ALJ erred in giving "great weight" to the opinion of Joe DeLoach, Ph.D., a state agency reviewing psychologist. (Doc. #10 at 19-20). As Rowley points out, at the time Dr. DeLoach reviewed his file, on September 4, 2012, the record contained only a single psychiatric treatment note from the relevant time period. (Tr. 20). On remand, the ALJ should reconsider what weight should be afforded Dr. DeLoach's opinion, particularly in light of the treatment notes and medical opinion evidence post-dating this opinion.

[9] The Court also notes that the opinion of the consultative examining psychologist, Michael Brady, Ph.D., which the ALJ gave "great weight," is not necessarily inconsistent with the opinion of Dr. Cherukuri that Rowley has significant problems with social interactions and concentration, persistence, and pace, and potentially adds credence to it. (Tr. 293-97). The ALJ highlighted Dr. Brady's opinion that Rowley's "ability to understand, recall, and complete tasks and expectations does not appear to be significantly impaired." (Tr. 35, 296). While it is true that Dr. Brady did reach this conclusion, he also opined that Rowley had an impaired ability to relate and interact with others, including coworkers and supervisors; his depression and distress could affect his interpersonal relationships in the workplace; his ability to maintain concentration was somewhat impaired; he might often be distracted, and his effectiveness and performance would likely be limited and slowed because of his emotional state; and his ability to withstand the normal stressors associated with a workplace setting was somewhat impaired. (Tr. 296). On remand, the ALJ should specifically weigh these findings against Dr. Cherukuri's opinion that Rowley "is severely limited in his ability to function in any work [e]nviroment." (Tr. 642).

14

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and Fed. R. Civ. P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *See Willis v. Sec'y of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. L.R. 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 12, 2016.

s/Eddrey O. Butts<br>
EDDREY O. BUTTS<br>
Case Manager